The opinion of the court was delivered by
Butler, X
Besides the question of location, this case involves other questions of great interest to the parties concerned. And these depend, not so much upon the location of the dam, as upon the duration of its existence, and the manner in which the parties have enjoyed their property, in reference to it. The action between the same parties in a former case, in which the present plaintiff was defendant, put in issue some of these rights; and, as far as they were recognized and established by the verdict of the jury, they must be maintained by the judgment of thi scourt. The question of location itself, is not free from difficulty. Assuming, (as it was admitted to be,) that the red pak stump was a corner, a line run from it with geometrical straightness, áccording to the course called for, would leave the dam on the defendant’s land. In the absence of all other evidence to control the location, this would prevail from necessity. Yet it is almost certain that such a line would not be identical with the one run by the surveyor that first made it. The original line was run through a dense forest, when Bull sold to Middleton. Before that time, as it appears by an ancient survey dated 1737, the land upon which the dam is now situated evidently belonged to Bull, the grantee, as it is represented to run for some distance on the land now claimed by defendant. The plaintiff can *636 now claim, however, only to the line then run. It would be singularly remarkable, if a line could be run, under the circumstances then existing, with mathematical exactness.
The surveyor, in running to a tree, might strike it at the centre or some inches from it, and when he went beyond, it would not be probable that he would preserve the precise line. In such case, he might make a set off of several inches, and in running a great distance, this would make a variation of many feet.
No two surveyors would run the same line alike, much less could any one run a line through a deep forest with scientific ■ precision. There is no reason for saying that the line run by Mr. White conforms precisely with the original boundary. It cannot now be ascertained, even by tradition, when or by whom the dam in controversy was. erected. There are many reasons to induce the belief' that it might have been made just after Bull sold to- Middleton, as a common boundary between the latter and the owner of the land now claimed by Gregorie. It has certainly been regarded as important to both tracts of land. The benefit to Middleton would be, .that it would enable him to cultivate his land by the ebbing and flowing of tide water, over which he could have a control by dams and trunks at the river. Whilst the other might have the benefit of the swamp water, for cultivating his land above. Both parties contend that the dam was originally built exclusively for the benefit of the party upon whose land it was located, without reference to the other. In Goddard’s plat, made in 1795, the dam is represented to be on plaintiff’s land. This would be sufficient color of title to give the plaintiff the right to the dam by virtue of his possession under it, if his possession had been all the time exclusive. On the other side, however, it appears that the persons under whom Gregorie claims, had possession of their land under old plats, representing, as it was contended, the dam to have been on their side. As early as 1764, a side drain or canal is represented on the defendant’s side; and it was contended that this dam was then made as auxilliary to and connected with the canal. Several witnesses said that such a dam would be in-. *637 dispensable to the canal, and for that purpose, should have been on the defendant’s land; it being admitted that the canal is on the land of the defendant, although the dirt thrown from it might form a bank on the dividing line.
Looking at the case in this point of view, the jury may have been warranted in locating the dam in favor of defendant. Whether the jury have adopted the true location or not, we do not undertake to determine ; and if that was the entire question in the case, we would not feel disposed to interfere with the verdict. There are other views of the parties’ rights, which we think should have been explained and submitted to the jury, and which I shall now undertake to consider.
The identity of the dam cannot be seriously disputed; and it has existed so long, that the memory of man run-neth not to the contrary thereof. During its existence, it must have been repaired either by one or both of the proprietors of the adjacent lands, otherwise it would have been, by this time, entirely obliterated. During part of the time, the present plaintiff kept it in repair, and regarded it as part of his external boundary; and if he did not claim the dam itself, he certainly claimed to it, and with reference to its benefits in cultivating his land on the river. And until a few years since, the swamp water was entirely stopped by this dam, and was drained through or thrown back on defendant’s land. Instead of running as it had done by nature, the water was diverted from its course by this dam, and the canal connected with it. If this had been done all that time, more than 60 years, exclusively ■for the benefit of the defendant and those under whom he claims, would it not have given them a perfect right of easement resulting from such a state of things ? Could the plaintiff* after such a lapse of time, have questioned their prescriptive rights 1 Prescription is founded on the presumption of a grant. And after twenty years, the law would have presumed that the plaintiff or his ancestors had granted to the swamp planters above, the right of stopping the water for their exclusive benefit, in the cultivation of their rice lands. No one has a right to divert a stream from its natural current, to the prejudice of those *638 who own lands below. But where it has been done by a party above for twenty years, his original wrong has ripened into a prescriptive right. Let the proposition be reversed. Is the party below incapable of acquiring a right of exemption from having his land overflowed, by the water’s being restored to its natural course 1 This is what the plaintiff contends for. ' He says, for more than forty years he has accommodated himself to a state of things existing by mutual consent, or brought about by the acts of the planters above. By way of illustrating his position, suppose that in consequence of the dam he had cut down and drained the land lying next to the river, and had planted it in some crop requiring entirely a dry culture— such as corn or cotton. Would the defendant have a right to cut his dam and destroy the growing- crop 1 For all legal purposes, the plaintiff might, under such circumstances, have regarded his land as though the water had never flowed through it. Indeed, I. think he would have as much right to enjoy his property in security, as if he had cultivated dry land above ; and it is very clear, that where one has land lying adjacent to a stream, and a proprietor below dams the water back on him, the former has a right of action to abate the nuisance.
The present plaintiff has cultivated his land on the river in rice. And for the purpose of cultivating such a crop with security and advantage, he must avail himself of the flux and reflux of the tide. To do this with certainty, he must be exempt from the overflowing of the water which has heretofore been obstructed in its passage by the dam.
Having come to the conclusion that some rights were acquirable by Mr. Middleton, from the long existence of the dam, the next question that presents itself for consideration is, what rights of his were determined* by the former recovery, or the finding of the jury in the case of Gregorie against Middleton 7 That was a special action on the case, the great object of which was to assert -and establish Gregorie’s right to vent the back water in the swamp, through Middleton’s land. A ,plat of survey representing the premises, was given in evidence. Upon that plat, the original run of the water, and of course *639 that contended for in the case, is indicated by a dotted line, shaded with red; this line commences at the dam, and runs thence in different channels to the river. From this, it would appear that Gregorie wished to vent the water from his own swamp lands, through Middleton’s land.
The finding of the jury is in these words, “ We find for the defendant, his privileges on the water course.” What these privileges were, in fact, does not appear from the verdict, or any thing on the record. It was, however, a finding against the plaintiff, his right to vent the swamp water through the land of the then defendant; and it was also finding for the defendant, an exemption from plaintiff’s claim of right. What rights or privileges the jury intended to affirm to the plaintiff, does not exactly appear; they can only be inferred from the nature of the issue. I have little doubt it was the intention of the jury to say that Middleton had a right to flow and drain his rice lands by taking advantage of the tide, without the interference of Gregorie. As this is a subject of some controversy, I will not undertake to pronounce an authoritative judgment on it. Let that, as well as all the other questions involved in the case, be considered, and determined on another trial.
Motion granted.
Richardson, O’Neall, Evans and Wardlaw, JJ. concurred.

*640